IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Francis P. Maybank, ) | Civil Action No. 6:12-214-JMC | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | | |
| ) | **NOTICE OF REMOVAL** | |
| BB&T Corporation, Branch Banking and ) | | |
| Trust Company, Successor in merger to ) | | |
| Branch Banking and Trust Company of SC, ) | | |
| Sterling Capital Management, LLC, ) | | |
| Successor in merger to BB&T Asset ) | | |
| Management LLC, Ross Walters, and ) | | |
| Anthony Mahfood, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

YOU ARE HEREBY NOTIFIED that, pursuant to 28 U.S.C. § 1446(b), the Defendants, BB&T Corporation, Branch Banking and Trust Company, Successor in merger to Branch Banking and Trust Company of SC, and Sterling Capital Management, LLC, Successor in merger to BB&T Asset Management LLC (collectively "BB&T"), hereby file this Notice of Removal of the above-captioned action from the Court of Common Pleas for Greenville County, State of South Carolina, to the U.S. District Court for the District of South Carolina, Greenville Division.

## I. STATEMENT OF COMMENCEMENT OF ACTION

The above-captioned action was commenced by the Plaintiff by the filing of a Summons and Complaint on December 22, 2011, and serving same on BB&T on December 22, 2011. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty days of first receipt by BB&T of the initial state court pleading.

## II.  PLEADINGS AND NOTICE TO STATE COURT

A true and correct copy of all process, pleadings, and orders served upon BB&T are attached as Exhibit A and are being filed along with this Notice of Removal.  A copy of this Notice of Removal has been provided to the Clerk of Court for the Greenville County Court of Common Pleas.

## III.  STATEMENT OF STATUTORY BASIS FOR JURISDICTION

This action is within the original jurisdiction of the U.S. District Court pursuant to 28 U.S.C. § 1332.  This statute provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  As discussed in detail below, this action satisfies both statutory requirements.

## IV.  AMOUNT IN CONTROVERSY

The Plaintiffs seek to recover in excess of $1 million in losses purportedly resulting from BB&T's alleged actions.  (Compl. ¶ 76.)  Therefore, the amount in controversy exceeds $75,000, and this jurisdictional requirement is satisfied.

## V.  CITIZENSHIP OF THE PARTIES

The Complaint alleges that the Plaintiff is a citizen and resident of Charleston County, South Carolina. (Compl. ¶ 1). BB&T Corporation was at the time of the filing of the Complaint, and still is, a corporation duly organized and existing under the laws of the State of North Carolina, with its principal place of business in North Carolina, and, accordingly, is not a citizen of the State of South Carolina.  Branch Banking and Trust Company also was at the time of the filing of the Complaint, and still is, a corporation duly organized and existing under the laws of

the State of North Carolina, with its principal place of business in North Carolina, and, therefore, also is not a citizen of the State of South Carolina.  Additionally, Sterling Capital Mortgage was at the time of the filing of the Complaint, and still is, an LLC duly organized and existing under the laws of the State of North Carolina, wholly owned by BB&T Corporation, with its principal place of business in North Carolina, and, accordingly, is not a citizen of the State of South Carolina. Because none of these Defendants is a citizen of the State of South Carolina, there is diversity between BB&T and the Plaintiffs.

The Complaint also names Ross Walters and Anthony Mahfood as defendants and alleges that they are citizens and residents of South Carolina.  (Compl. ¶¶ 8–9.)   The Plaintiff's attempted joinder of Ross Walters and Anthony Mahfood in this lawsuit does not preclude diversity jurisdiction because they have been fraudulently joined.   Under the doctrine of fraudulent joinder, the citizenship of Ross Walters and Anthony Mahfood can be disregarded for purposes of determining the existence of diversity jurisdiction.[1]  *See, e.g., Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

## VI.   FRAUDULENT JOINDER

### A.        Standard for Determining Fraudulent Joinder.

"The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case."  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).  As explained by the Fourth Circuit in *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990):

---

[1] Ross Walters and Anthony Mahfood's citizenship can also be disregarded with respect to the 28 U.S.C. § 1441(b) requirement that no defendant be a citizen of the state in which the action was commenced.

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the non-diverse defendant, or *in fact* no cause of action exists.

*Id.* at 1003 (emphasis in original). To remove an action based on fraudulent joinder, "the defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir. 1993).

### B. Fraudulent Joinder Must Be Determined from the Allegations in the Complaint as They Exist at the Time of Removal.

Whether a case is appropriate for removal based on fraudulent joinder is determined by reference to the contents of the complaint *at the time of removal*, and factual allegations or causes of action not alleged in the complaint or which might be added by way of subsequent amendment need not be considered. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 262 (5th Cir. 1995) (affirming denial of motion to remand, rejecting plaintiffs' reliance on cause of action not asserted in complaint). Here, because the original Complaint does not set forth any viable cause of action against Ross Walters and Anthony Mahfood, the Court need not look any further and can conclude that removal is proper. *See, e.g., Chamberlain v. American Tobacco Co.*, 70 F. Supp. 2d 788, 796 (N.D. Ohio 1999) ("This theory of liability was also not alleged in plaintiffs' state court complaint; therefore, it is also not necessary for the Court to address this theory in determining whether the Ohio defendants were fraudulently joined.").

### C. The Complaint Does Not Set Forth any Viable Cause of Action Against Ross Walters and Anthony Mahfood.

The Complaint alleges claims based on (1) breach of contract, (2) breach of fiduciary duty, (3) negligence, (4) breach of contract accompanied by a fraudulent act, (5) alleged

4

violation of the South Carolina Uniform Securities Act, and (6) alleged violation of the South Carolina Unfair Trade Practices Act. None of these provide a viable claim against Walters or Mahfood. Each claim is addressed *seriatim* below.

### 1. Breach of Contract.

The Plaintiff asserts against BB&T, Walters, and Mahfood a claim for breach of contract. (Compl. ¶¶ 77–83.) Walters and Mahfood cannot be subject to a breach of contract claim because it is alleged that the Plaintiff specifically entered into a contract with BB&T (Compl. ¶¶ 78–79), and that at all relevant times Walters and Mahfood were acting as the agents of BB&T (Compl. ¶ 10).

It is a basic tenet of law that "an agent is not contractually liable to third parties for the obligations of his principal." *First Citizens Bank and Trust Co. v. Strable*, 355 S.E.2d 278, 279 (S.C. Ct. App. 1987). As stated in *Green v. Industrial Life & Health Ins. Co.*, 18 S.E.2d 873 (S.C. 1942), "Where an agent enters into a contract for a known principal, while acting within his authority as such agent, he is not personally liable on the resultant contract. The liability, if any, for a breach of such contract is that of the principal alone." *Id.* at 876–77.

The Plaintiff alleges that Walters and Mahfood were agents of BB&T "[a]t all times," and "[all of their actions, inactions, omissions, and wrongdoing were preformed for and on behalf of the Bank in the court and scope of their agency and/or employment with BB&T." (Compl. ¶ 10). Thus, the contract alleged in the Complaint could be between only the Plaintiff and BB&T. Walters and Mahfood, as mere alleged agents for BB&T, could never be liable under any such alleged contract. For these reasons, the Complaint fails to state a viable cause of action against Walters and Mahfood based on breach of contract. *See Sullivan v. Sullivan*, No.

3:09-1937-JFA, 3 (D.S.C. Jan. 19, 2010) (finding that an agent acting within the scope of authority cannot be liable on a contract entered into for a known principal).[2,3]

### 2.     Breach of Contract Accompanied by a Fraudulent Act.

The Plaintiff asserts against Walters and Mahfood a claim for breach of contract accompanied by a fraudulent act. (Compl. ¶¶ 99–105.) Under South Carolina law, a plaintiff must first prove a breach of contract before there can be a recovery for breach of contract accompanied by a fraudulent act. *See RoTec Services, Inc. v. Encompass Services, Inc.*, 597 S.E.2d 881, 883 (S.C. Ct. App. 2004) ("To maintain an action for breach of contract accompanied by a fraudulent act, a plaintiff must prove three elements: (1) a breach of contract . . . ."). As set forth above, the Plaintiff has no viable claim against Walters and Mahfood for breach of contract. For the same reason, the claim for breach of contract accompanied by a fraudulent act also fails.

### 3.     Breach of Fiduciary Duty

The Plaintiff asserts a claim for breach of fiduciary duty against the Defendants. (Compl. ¶¶ 84–91.) This is not a viable claim against Walters or Mahfood. It is alleged that at all times they were acting as agents of BB&T. (Compl. ¶ 10.) As alleged agents of BB&T, they would owe fiduciary duties to BB&T to the exclusion of all others with whom they dealt. In a similar context involving fraudulent joinder, Judge Joseph Anderson concluded that there was no viable claim for breach of fiduciary duty against a financial advisor. Judge Anderson denied the motion

---

[2] After factual developments during the discovery period, Judge Joseph Anderson found that there was a viable claim for conversion against the individual defendant and remanded the case to state court. *Sullivan v. Sullivan*, No. 3:09-1937-JFA (D.S.C. March 11, 2011). However, the order addressing the cause of action for breach of contract accompanied by a fraudulent act and other causes of action asserted in the case are still sound.

[3] Pursuant to Local Civil Rule 7.05(A)(4), copies of all unpublished decisions are attached as Exhibit B.

to remand, holding "When a principal and agent are both sued for breach of fiduciary duty by a third party, the claim can only proceed against the principal, as the agent *cannot have individual liability for such a claim.*" *Sullivan* at 5, No. 3:09-1937-JFA (D.S.C. Jan. 19, 2010) (emphasis added).

"An agent is a fiduciary with respect to matters within the scope of his agency." *See* Restatement (Second) of Agency § 13 (1957). Agents, however, cannot serve two masters and owe their duty of loyalty to their principal. As stated by the South Carolina Supreme Court in *McCallum v. Grier*, 68 S.E. 466 (S.C. 1910),

> "[A] broker employed to sell cannot act at the same time as the agent of the purchaser, for in that case the duty he owes to one principal to sell for the best price obtainable is essentially inconsistent with, and repugnant to, the duty he owes to the other to buy at the lowest price possible, and there would necessarily, be danger that the right of one principal would be sacrificed to promote the interests of the other."

*Id.* at 468–69.

South Carolina law recognizes that one who is already a fiduciary cannot, as a matter of law, have a fiduciary relationship with another with respect to the same transaction. *See Harrington v. Mikell*, 469 S.E.2d 627, 629 (S.C. Ct. App. 1996) (holding that, because broker was agent for seller, "a fiduciary relationship did not exist between [buyer] and [broker]."). Cases from other jurisdictions also recognize this principle. *See In re Northwestern Mut. Life Ins. Co. Sales Practices Litig.*, 70 F. Supp. 2d 466, 489 (D.N.J. 1999) ("[T]he agent owes a fiduciary duty to the insurance company its employer, not to the insured."), *aff'd*, 259 F.3d 717 (3d Cir. 2001).

This principle was also relied upon by the court in *Bennett v. Allstate Insurance Co.*, 753 F. Supp. 299 (N.D. Cal. 1990), in a similar fraudulent joinder context. In *Bennett*, the insureds

7

sued their insurance company and its sales agent because the insurance company denied coverage for a loss. The lawsuit was filed in state court, then removed to federal court on the grounds that the agent had been fraudulently joined. The insureds contended that they had a valid cause of action against the agent based on breach of fiduciary duty. The purported fiduciary relationship with the agent was based on allegations that the agent "held himself out as a long-time friend and cultivated the appearance of unyielding fidelity to the [insureds]." *Id.* at 301.

The court rejected the fiduciary duty claim and denied the insureds' motion to remand. The court stated that, even if California law permitted a fiduciary relationship between an insurer and insured, "there is the further difficulty in this case that the putative fiduciary is the insurer's agent." *Id.* at 303. The court explained:

> If [the agent] were held to be the [insureds'] fiduciary, he would have to place their interests not only before his own, but before his employer as well. But such a scenario plainly runs afoul of the long-standing axiom, embraced in California, that an "agent may not compete with the principal, nor may he or she act as an agent for another whose interests conflict with those of the principal."

*Id.* (citations omitted).

In the present case, the Plaintiff contends that at all times Walters and Mahfood were the agents of BB&T and were acting within the course and scope of their employment. (Compl ¶ 10) ("At all times relevant to this case, Walters and Mahfood were agents, representatives, servants, and/or employees of BB&T. All of their actions, inactions, omissions and wrongdoing were performed for and on behalf of the Bank in the course and scope of their agency and/or employment with BB&T."). Thus, there can be no question that under South Carolina law they could owe fiduciary duties only to their principal, BB&T, which excludes the possibility that they owed fiduciary duties to the Plaintiff.

### 4. Negligence

The Plaintiff attempts to assert a claim for negligence against Walters and Mahfood. (Compl. ¶¶ 92–98). Negligence is not a viable claim against Walters and Mahfood, however, because no circumstances have been alleged that would give rise to any duty in tort owed to the Plaintiff to prevent the alleged economic harm. "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 81 (S.C. 1998).

This Court has recognized in a similar fraudulent joinder context that a financial advisor has no independent duty in tort, and that "when economic harm is at issue, the existence of a duty of care to the plaintiff cannot be presumed, especially when there are allegations of a contractual relationship." *Sullivan* at 5–6, No. 3:09-1937-JFA (D.S.C. Jan. 19, 2010); *see also Felder v. Great American Ins. Co.*, 260 F. Supp. 575, 578 (D.S.C. 1966) (dismissing negligence claim under Rule 12(c) motion based on absence of duty in tort with respect to handling of insurance claim). When economic harm is at issue, rather than personal injury, the existence of a duty of due care to the plaintiff cannot be presumed. This is especially true when there are allegations of a contractual relationship. *See Timmons v. Starkey*, 671 S.E.2d 101, 106 (S.C. Ct. App. 2008) (holding, in suit against broker-dealer, that "[a]ny duty to prevent the removal of funds from [the investor's] account arises solely from the parties' contractual relationship.").

Furthermore, under the economic loss rule, the Plaintiff cannot rely on duties that arise in contracts to support a tort claim. Absent allegations showing the existence of a duty of due care in tort, a negligence claim seeking damages solely for economic loss is not viable. *Sullivan* at 5–6, No. 3:09-1937-JFA (D.S.C. Jan. 19, 2010) (finding that when economic harm is at issue, "plaintiffs cannot maintain an action in tort for what they also seek through a breach of contract

9

claim"); *see also Flagstar Bank, FSB v. First Citizens Bank*, No. 3:09-876-CMC, 2009 U.S. Dist. LEXIS 54289 (D.S.C. June 17, 2009) (dismissing negligence claim under Rule 12(c) because "[plaintiff] has failed to plead or direct the court to any other legal basis for imposing a duty of due care on Defendants . . . beyond the duty arising out of the contractual relationship evidenced by the Agreements.  The court, therefore, dismisses the negligence claim . . . based on the absence of a non-contractual duty of due care.").

     5.     **State Securities Act**

The Plaintiff attempts to assert a claim under the state securities act. (Compl. ¶¶ 106–111.)  The Plaintiff does not assert a viable claim under this actagainst Walters and Mahfood, however.  The Plaintiff alleges that the first transaction involving a Variable Prepaid Forward Contract ("VPFC") took place in 2006.  (Compl. ¶ 60.)  Because that transaction was more than five years before the date of the filing of this lawsuit, all claims under the state securities act relating to that transaction are barred by the five year statute of limitations. S.C. Code Ann. § 35-1-509(J)  The 2009 transaction involving a second VPFC is the only transaction identified in the Complaint for which claims under the state securities act would not be barred by the statute of limitations.  However, the only potential civil liabilities subsection under which the Plaintiff could even arguably assert a claim is section 35-1-509(f).  This subsection addresses liabilities of "a person that that receives directly or indirectly consideration for providing investment advice regarding securities" and who defrauds another person in the process.  S.C. Code Ann. § 35-1-509(f).

As demonstrated in the affidavit of Ross Walters (Exhibit C), neither Walters nor Mahfood received consideration for providing investment advice regarding the 2009 VPFC transaction.  Indeed, this required element of the claim is not even pled in the Complaint.

(Compl. ¶¶ 106–111.)  Accordingly, the Plaintiff cannot establish a claim under section 35-1-509(f), and the claim for state securities fraud must fail.

### 6. South Carolina Unfair Trade Practices

The Plaintiff's last cause of action attempts to assert a claim for violation of the South Carolina Unfair Trade Practices Act against Walters and Mahfood.  (Compl. ¶¶ 112–119).  The Plaintiff's UTPA claim must fail.  The Supreme Court of South Carolina has specifically held transactions related to securities are exempted from the UTPA under section 39-5-40 because the securities industry is heavily regulated by the Securities and Exchange Commission and other laws and agencies.  *McLeod v. Rhoades*, 267 S.E.2d 539, 541 (S.C. 1980) (reversed with respect to the "general activity test" for determining exemption from the UTPA by *Ward v. Dick Dyer and Assocs., Inc.*, 403 S.E.2d 310, 312 (S.C. 1991), but which continued "to follow the vast majority of jurisdictions in holding that securities transactions remain exempt from claims under the UTPA").  It is clear from the allegations in the Complaint that securities are at issue in this case.  Accordingly, the Plaintiff cannot state a cause of action against Walters or Mahfood under the UTPA.

### VII.  JOINDER OF DEFENDANTS IN REMOVAL

The joinder of Ross Walters and Anthony Mahood in this removal is unnecessary because they have been fraudulently joined in this matter.  It is well settled that fraudulently joined defendants need not join in a Notice of Removal.  *See, e.g., McKinney v. Rodney C. Hunt Co.*, 464 F. Supp. 59, 62 (W.D.N.C. 1978) (stating that while "each and every defendant who can meet the jurisdictional requirements of 28 U.S.C.A. § 1441 must join in a petition for removal . . .  A caveat to the general rule is that . . . defendants fraudulently joined may be disregarded . . . .").

## VIII.  REQUEST FOR BRIEFING AND ORAL ARGUMENT

In the event any question arises as to the propriety of the removal of this matter, BB&T requests the opportunity to present briefs and oral argument in support of its position that removal is proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/Kristen E. Horne
    Kristen E. Horne
    Federal Bar No. 10136
    D. Larry Kristinik
    Federal Bar No. 5744
    Cory E. Manning
    Federal Bar No. 9697
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211)
    Columbia, SC  29201
    (803) 799-2000

*Attorneys for Defendants BB&T Corporation, Branch Banking and Trust Company, and Sterling Capital Management, LLC*

Columbia, South Carolina

January 23, 2011

CERTIFICATE OF SERVICE

I, Kristen E. Horne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated:  January 23, 2012                                                     s/Kristen E. Horne

6:12-cv-00214-JMC     Date Filed 01/23/12     Entry Number 1     Page 13 of 13