**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Francis P. Maybank, ) | |
| ) | Civil Action No. 6:12-cv-00214-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| BB&T Corporation, Branch Banking and ) | |
| Trust Company, Successor in merger to ) | |
| Branch Banking and Trust Company of SC, ) | |
| Sterling Capital Management, LLC, ) | |
| Successor in merger to BB&T Asset ) | |
| Management LLC, Ross Walters, and ) | |
| Anthony Mahfood, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Francis P. Maybank ("Maybank") brought this action against defendants BB&T Corporation, Branch Banking and Trust Company, and Sterling Capital Management, LLC (collectively, "BB&T"), Ross Walters ("Walters"), and Anthony Mahfood ("Mahfood," and together with BB&T and Walters, "Defendants") alleging several causes of action arising from Defendants' provision of financial investment advice to Maybank. Maybank alleges that he lost a substantial amount of money in several investments he made as a result of following two strategic investment plans created by Walters and Mahfood. Maybank initially filed suit against Defendants in state court. Defendants removed the case to federal court on the ground that Maybank fraudulently joined Mahfood and Walters. Currently before the court is Maybank's Motion to Remand [Doc. 15] under 28 U.S.C. § 1447 and Motion for Costs and Expenses [Doc. 34] pursuant to 28 U.S.C. § 1447(c) and Rule 54(d)(2) of the Federal Rules of Civil Procedure.

1

For the reasons stated herein, the court grants Maybank's Motion to Remand and denies his Motion for Costs and Expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Maybank owned his own trust and asset management company for many years. In 2001, BB&T acquired Maybank's company through a stock exchange. Pursuant to the acquisition agreement and to provide for a smooth transition for Maybank's clientele, Maybank worked for BB&T until 2006. Maybank and defendants Walters and Mahfood became familiar with one another over the five years of working together.

In preparation for his retirement, Maybank alleges that he engaged Walters and Mahfood to devise an investment plan that reflected Maybank's goals of diversification, steady income, tax sheltering, and the ability to protect his wealth for his heirs. He contends, however, that the plan was actually very aggressive, risky, and involved a complex system of derivative trading with BB&T's stock – a plan which he characterizes as an uncommon investment approach for someone beginning retirement. According to Maybank, diversification and low-risk investments were not objectives of the devised plan. Defendants claim that, despite Maybank's current complaints regarding the performance of his investments, the plan implemented by Defendants achieved many of Maybank's investment goals including the provision of tax sheltering opportunities and steady dividend income before the downturn of the economy.

Maybank moves to remand this case to South Carolina state court pursuant to 28 U.S.C. § 1447 on the ground that this court lacks subject matter jurisdiction because there is not complete diversity, as plaintiff Maybank and defendants Walters and Mahfood are all residents of South Carolina.

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. The party invoking federal jurisdiction has the burden of proving the jurisdictional requirements for diversity jurisdiction. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008) (holding that in removing case based on diversity jurisdiction, party invoking federal jurisdiction must allege same in notice of removal and, when challenged, demonstrate basis for jurisdiction). Federal courts may exercise original diversity jurisdiction only if no plaintiff and no defendant are citizens of the same state. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388, 118 S. Ct. 2047, 2052 (1998). Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court. *See Auto Ins. Agency, Inc. v. Interstate Agency, Inc.*, 525 F. Supp. 1104, 1106 (D.S.C. 1981) (citing *Penn Sec. Co. v. Home Indem. Co.*, 418 F. Supp. 292, 294 (M.D. Pa. 1976); *Anderson v. Union Pac. Coal Co.*, 332 F. Supp. 605, 608 (D. Wyo. 1971)).

"Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (citing *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979)). The party seeking removal based on alleged fraudulent joinder by the non-moving party must prove "that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (alterations in original). A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted. *Id.* (citing 14A Charles A. Wright et al., *Federal Practice & Procedure* § 3723 (2d ed.1985)).

3

When there is uncertainty, the court is obliged to resolve all issues of fact and law in the plaintiff's favor.  *Marshall*, 6 F.3d at 232-33.  "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).  Indeed, because a claim of fraudulent joinder presents a jurisdictional inquiry, it must be resolved before the court makes any determination of the adequacy of the allegations in the complaint for claim dismissal purposes.  *See Brantley v. Vaughan*, 835 F. Supp. 258, 261-62 (D.S.C. 1993) (discussing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992)).

"[I]n determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes,* 198 F.3d at 464 (citations omitted).  However, the court's subject matter jurisdiction over an action removed from state court is determined as of the time of the removal. Therefore, the court generally does not consider post-removal amendments of the complaint in determining the propriety of removal.  *See Pinney v. Nokia, Inc*., 402 F.3d 430, 443 (4th Cir. 2005) ("Because amendment occurred after removal, we look at the original complaints rather than the amended complaints in determining whether removal was proper.") (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

## DISCUSSION

**Fraudulent Joinder of Walters and Mahfood**

Maybank requests this court to remand this case to South Carolina state court because there is not complete diversity among the parties and thus this court lacks subject matter jurisdiction.  Defendants oppose the motion and assert that Walters and Mahfood were fraudulently joined simply to defeat federal jurisdiction.  Defendants contend that Maybank

4

cannot possibly establish any of his alleged claims for breach of fiduciary duty, negligence, violation of the South Carolina Uniform Securities Act of 2005 ("Securities Act"), or violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") against either Walters or Mahfood; therefore, the only legitimate defendants in the case are the BB&T entities, all foreign corporations.[1]

### A. Breach of Fiduciary Duty

Generally, a fiduciary duty arises where a party entrusts special confidence in another such that the latter is bound to act in good faith and with due regard to the interests of the party entrusting said confidence. *See SSI Medical Services v. Cox*, 310 S.C. 493, 500, 392 S.E.2d 789, 794 (1990). To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his or her own behalf but in the interest of the party so reposing. *Moore v. Moore*, 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct. App. 2004). The relationship cannot be created by the unilateral actions or expectations of one party. *See Steele v. Victory Bank*, 295 S.C. 290, 294-95, 368 S.E.2d 91, 94 (Ct. App. 1988) (citing 36A C.J.S. Fiduciary (1961)).

South Carolina courts have not addressed whether an investment advisor owes a fiduciary duty to a client. However, numerous courts in other jurisdictions have acknowledged the fiduciary nature of the relationship between an investment advisor and a client. *See McGraw v. Wachovia Securities, L.L.C.*, 756 F. Supp. 2d 1053, 1078 (N.D. Iowa 2010 (noting that "a fiduciary duty exists between a broker or financial advisor and a customer or other individual if the individual entrusts the broker/advisor to select and manage his or her investments") (citations

---

[1] Defendants do not argue that Maybank committed any fraud in pleading any jurisdictional facts concerning Walters and Mahfood.

5

omitted); *Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of America Sec., LLC*, 716 F. Supp. 2d 236, 242 n.26 (S.D.N.Y. 2010) (commenting that "under New York law, a defendant's fiduciary duty to a plaintiff is often inferred from a contract between the two parties. However, once that fiduciary duty is established, the relationship the contract establishes imposes 'a duty to act with care and loyalty independent of the terms of the contract.'"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 697 F. Supp. 1224, 1227 (D.D.C. 1988) (finding that a stockbroker may be held to a level of trust and confidence sufficient to establish a breach of fiduciary duty claim); *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 337 F. Supp. 107 (N.D. Ala. 1971) (recognizing that "[w]here the broker-dealer is also an investment advisor" the broker "does occupy a fiduciary relationship" with the client); *Johnston v. CIGNA Corp*., 916 P.2d 643, 647 (Colo. Ct. App. 1996) ("In general, an investment advisor owes a fiduciary duty to his or her customers.").   Although not directly on point, the Supreme Court of South Carolina has previously found that a financial institution owes a fiduciary duty to its customer where the institution goes beyond the mere provision of transactional services and actually engages in an advisory role with respect to the customer.  *See Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986).  This court does not find it unreasonable to presume that South Carolina state courts may extend this proposition to individual investment or financial advisors who provide advice to a client and not merely the execution of discreet transactions at the direction of the client.  But, it is not appropriate for this court to make that determination in this case. "Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly "novel" issue such as this cannot be the basis for finding fraudulent joinder."  *Hartley*, 187 F.3d at 425.   Accordingly, the court finds that Maybank did

not fraudulently join Walters and Mahfood because there remains a possibility that South Carolina state courts would recognize the existence of a fiduciary duty in this case.

Defendants argue that the court should assert jurisdiction over this case and deny Maybank's request to remand based on their argument that as employees of BB&T, Walters and Mahfood, can only serve BB&T's interests as its agents. In support of their argument, Defendants attempt to analogize the relationship that financial advisors share with clients to one that a real estate agent shares with a buyer. These relationships are distinct. A real estate agent serves the interest of the seller, attempting to secure the highest possible selling price, or the buyer, attempting to secure the lowest possible purchase price. It is clear that a real estate agent can never serve these two different "masters" at the same time in a fiduciary capacity because the interests are mutually exclusive. *See McCallum v. Grier*, 86 S.C. 162, 168, 68 S.E. 466, 468-69 (1910) (noting that a real estate broker employed by a seller cannot act as an agent for the buyer because their interest are inconsistent); *Harrington v. Mikell*, 321 S.C. 518, 521, 469 S.E.2d 627, 629 (Ct. App. 1996) (holding that, because broker was agent for seller, "a fiduciary relationship did not exist between [buyer] and [broker]").

Defendants also try to draw comparisons between the instant circumstance and the relationship of an insurance agent with a customer by relying on an unpublished opinion from this District wherein the court found that an agent of an insurance company did not have any independent liability for a breach of fiduciary duty. *See Sullivan v. New York Life Ins.*, No. 3:09-1937-JFA (D.S.C. Jan. 19, 2010). *Sullivan* involved a dispute arising from an agent's failure to execute the plaintiff's instructions to invest in the investment products offered by the insurance company which the agent represented. The agent's responsibility to the customer was that of a

mere conduit engaged to complete transactional services. It did not concern allegations of breach of fiduciary duty arising from an advisory relationship.

Neither of the circumstances relied upon by Defendants is applicable here. In the instant matter, Walters and Mahfood were not executing transactions with Maybank on behalf of BB&T, their employer, as a real estate agent would between buyer and seller or as an insurance agent would when selling his or her company's products to a customer. Instead, Maybank alleges that they served as his advisors and were tasked with the responsibility to recommend a financial strategy appropriate for him based on their expertise. These facts are sufficiently distinct from the prior cases addressed by the South Carolina courts to prevent their clear application here. The court cannot say that no claim for breach of fiduciary duty lies in these facts because South Carolina has not yet passed on the issue.

Based on the record before the court, and "[r]esolving all issues of fact and law in the plaintiff's favor," *Marshall*, 6 F.3d at 233, the court finds that it may be possible for Maybank to pursue a claim for breach of fiduciary duty against Walters and Mahfood. Accordingly, the case is appropriately remanded to state court.

### B. South Carolina Uniform Securities Act

The South Carolina Uniform Securities Act of 2005 provides for the enforcement of civil liability for certain violations of the Securities Act. *See* S.C. Code. Ann. § 35-1-509(a) (Supp. 2010).[2]

Section 509(b) allows a buyer to pursue a claim against

---

[2] Maybank's complaint does not specify which subsection of Section 509 Maybank intends to use to impose liability against Walters and Mahfood. However, Maybank contends that he could assert liability against Walters and Mahfood under Sections 509(b) and 509(f) of the Securities Act. Accordingly, the court will address whether Maybank could possibly have a claim against Walters or Mahfood pursuant to these subsections.

> the person [who] sells a security in violation of Sections 35-1-301 or 35-1-501 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

S.C. Code Ann. § 35-1-509(b).

Section 509(f) provides that

> A person that receives directly or indirectly any consideration for providing investment advice regarding securities to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person, is liable to the other person.

S.C. Code Ann. § 35-1-509(f).

Additionally, Section 509(g) makes certain other "persons . . . liable jointly and severally with and to the same extent as persons liable under subsections (b) through (f). S.C. Code Ann. § 35-1-509(g). This provision specifically extends liability to "an individual who is an employee, or a person occupying a similar status or performing a similar function, of a person liable under subsections (b) through (f) and who materially aids the conduct giving rise to the liability" and "a person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability under subsections (b) through (f)." S.C. Code Ann. § 35-1-509(g)(3) and (4).

Defendants contend that Maybank does not have a colorable claim against Walters or Mahfood under either subsection b or f. Specifically, Defendants contend that Walters and Mahfood could not be liable under Section 509(b) because it only applies to sellers and Defendants contend that none of them actually sold the security at issue. Defendants interpret

9

this provision too strictly.  In fact, Defendants do not cite any authority for their interpretation of the word "sells."

The South Carolina Securities Act does not define "seller" and South Carolina courts have not defined the term in the context of the Securities Act.  However, in interpreting the use of the term in similar provisions of the Federal Securities Act of 1933, the United States Supreme Court has explained that "[t]he statutory terms ["offer" and "sell"], which Congress expressly intended to define broadly, ... are expansive enough to encompass the entire selling process, including the seller/agent transaction."  *Pinter v. Dahl*, 486 U.S. 622, 643 (1988) (citing *United States v. Naftalin*, 441 U.S. 768, 773 (1979)) (alterations in original).  The court further noted that "[a] natural reading of the statutory language would include in the statutory seller status at least some persons who urged the buyer to purchase."  *Id*. at 644.  Because the term "sells" as used in Section 509(b) is not clearly defined by South Carolina law, the court cannot accept Defendants' interpretation, particularly without any reliable authority, as the basis for finding that Maybank could not possibly hold Walters and Mahfood liable under the statute as a seller.

The court must also reject Defendants' arguments concerning the application of Section 509(f).  Defendants assert that Walters and Mahfood are exempt from liability under this subsection because Section 509(f) "does not apply to a broker-dealer or its agents if the investment advice regarding securities that is provided is solely incidental to transacting business as a broker-dealer and no special compensation is received for the investment advice."  S.C. Code Ann. § 509(f)(2). Defendants arguments presupposes that the BB&T entity employing Walters and Mahfood are broker-dealers.  As defined in the statute, a "'[b]roker-dealer' means a person engaged in the business of effecting transactions in securities for the account of others or

10

for the person's own account," but expressly excludes a bank or financial institution engaged in specific activities described in the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(4) and (5).  *See* S.C. Code Ann. § 35-1-102(4).   Based on the current record in this case, the court cannot conclude that the exception is applicable here.

Defendants further argue that Walters and Mahfood could not be liable under this section of the Securities Act because they did not receive any special consideration for providing investment advice in connection with Maybank's purchase of the securities at issue.  If the broker-dealer exception is not applicable here, Defendants have not demonstrated that no colorable claim exists against Walters and Mahfood for violations of Section 509(f).  As provided in the statute, liability attaches to any "person that receives directly or indirectly consideration for providing investment advice."  *Id*.  The statute does not indicate what constitutes direct or indirect consideration, and Defendants have not cited any authority explaining what constitutes indirect and direct compensation under Section 509(f).  Defendants only offer conclusory arguments that Walters and Mahfood never received direct or indirect compensation for advising Maybank.  Additionally, Defendants ignore that Walters and Mahfood could be jointly liable for a violation of Section 509(f) by the BB&T entities if Walters and Mahfood are found to have materially aided in BB&T's conduct.  *See* S.C. Code Ann. § 35-1-509(g)(3) and (4).  Therefore, Defendants have failed to meet the heavy burden of proving there is no possibility of Maybank having a State Securities Act claim against the individual defendants.  Accordingly, the court cannot find that Maybank fraudulently joined Walters and Mahfood, and this case should be remanded.

Because the court grants Maybank's request for remand on the grounds that he has a possibility of pursuing claims against Walters and Mahfood for breach of fiduciary duty and

violations of the Securities Act, the court need not address the propriety of the remaining claims against the individual defendants.

**Plaintiff's Motion for Costs and Expenses**

After filing his Motion to Remand, Maybank filed a subsequent motion seeking an award of the attorney's fees he incurred in his efforts to remand this case to state court on the grounds that Defendants' removal of this action to federal court lacked an objectively reasonable basis and was made solely for the purpose of delay.

A court "may require payment of just costs and any actual expense, including attorney fees" for cases remanded by the district court for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). The Supreme Court of the United States has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Supreme Court found that fee shifting was appropriate in some cases, noting that:

> [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.

This court acknowledges the burdens of removing and later remanding the same case; however, this specific situation does not warrant an award of attorney's fees. As discussed in detail above, many of the claims made by Maybank and the arguments made by Defendants have

12

not been addressed by South Carolina courts. Accordingly, Defendants had an objectionably reasonable basis for removing the case to federal court. Therefore, the court denies Maybank's request for costs and expenses.

## CONCLUSION

Based on the record and the arguments of the parties, the court finds Maybank could possibly establish a state law cause of action against Walters and Mahfood and, therefore, this court lacks subject matter jurisdiction over this case. Accordingly, the court **GRANTS** Plaintiff's Motion to Remand [Doc. 15], and this action is hereby **REMANDED** to the Court of Common Pleas in Greenville County, South Carolina for further proceedings. The court further **DENIES** Plaintiffs' Motion for Costs and Expenses [Doc. 34].

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 3, 2012
Greenville, South Carolina

13