**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| Francis P. Maybank, | ) | |
| | ) | Civil Action No. 6:12-cv-00214-JMC |
| Plaintiff, | ) | |
| | ) | **OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| BB&T Corporation, Branch Banking and | ) | |
| Trust Company, Successor in merger to | ) | |
| Branch Banking and Trust Company of SC, | ) | |
| Sterling Capital Management, LLC, | ) | |
| Successor in merger to BB&T Asset | ) | |
| Management LLC, Ross Walters, and | ) | |
| Anthony Mahfood, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff Francis P. Maybank's ("Maybank") Motion to Alter or Amend Order Denying Motion for Costs and Expenses (Attorney's Fees) ("the Motion") [Dkt. No. 48]. For the reasons discussed below, the court denies the Motion.

**PROCEDURAL BACKGROUND**

Maybank brought this action against Defendants BB&T Corporation, Branch Banking and Trust Company, and Sterling Capital Management, LLC (collectively, "BB&T"), Ross Walters ("Walters"), and Anthony Mahfood ("Mahfood," and together with BB&T and Walters, ("Defendants")), alleging several causes of action arising from Defendants' provision of financial investment advice to Maybank. Maybank alleges that he lost a substantial amount of money in several investments he made as a result of following two strategic investment plans created by Walters and Mahfood, who were employees of BB&T in its Wealth Advisors Division.

Maybank initially filed suit against Defendants in state court. Defendants removed the case to federal court, pursuant to the court's diversity jurisdiction, alleging that Maybank had fraudulently joined Mahfood and Walters in the action below in order to preemptively defeat diversity. This court granted Maybank's Motion to Remand [Dkt. No. 15] the action to state court but denied his request for fees associated with the removal action. *Maybank v. BB&T Corp., Branch Banking & Trust Co.*, Civil Action No: 6:12-cv-00214-JMC, 2012 WL 3157006 (D.S.C. Aug. 3, 2012).

Maybank timely filed the instant Motion, asserting that the court applied the incorrect standard in concluding that removal of this action was objectively reasonable such that attorney's fees were not warranted. Maybank further argues that failing to award attorney's fees created a manifest injustice since Maybank was forced to endure the costs and delay associated with litigating an improper removal. Defendants filed their Response in Opposition [Dkt. No. 49] to the motion and Maybank filed a Reply [Dkt. No. 50]. On March 27, 2013, Maybank submitted[1] a Supplement [Dkt. No. 55] to his Motion asserting that newly discovered evidence, not available to him at the time of this court's prior ruling, refutes Defendants' fraudulent joinder arguments. On April 23, 2013, the court held a hearing in which both parties argued their positions regarding the instant Motion and the new evidence contained in the Supplement.

## STANDARD

A court may alter or amend its judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure if the movant shows: (1) an intervening change in the controlling law; (2) new evidence that was not available at the time of the ruling; or (3) that there has been a clear error of

---

[1] The Supplement was originally submitted to the parties and the court via email because Maybank believed the deposition testimony attached to the Supplement included information Defendants wished to keep confidential. The court subsequently directed Maybank to file his Supplement with the confidential sections redacted.

law or a manifest injustice. *Robinson v. Wix Filtration Corp*., 599 F.3d 403, 407 (4th Cir. 2010). Maybank's Motion to Alter or Amend [Dkt. No. 48] alleges that the court made a clear error of law and that Maybank has suffered a manifest injustice. Maybank's later-filed Supplement [Dkt. No. 55] puts forth new evidence that he alleges was not available at the time of the court's ruling on his motion.

## DISCUSSION

**Clear Error of Law**

Maybank asserts that the court's decision not to award attorney's fees constitutes a clear error of law and has resulted in a manifest injustice.

"An order remanding a case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005) (citation omitted). The United States Supreme Court has held:

> [t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id*. at 140. Whether or not to award attorney's fees under this section is left to the sound discretion of the court. *Id.* at 136.

Here, Defendants removed the case on the basis of diversity, arguing that Maybank fraudulently joined Defendants Walters and Mahfood in an effort to defeat the complete diversity that existed between Maybank and the other foreign BB&T entities in this case. "To show

3

fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc*. 187 F.3d 422, 424 (4th Cir. 1999) (internal citations omitted).

In this case, Defendants asserted that Maybank could not establish the causes of action in his complaint against Walters and Mahfood. The court found that Defendants failed to meet the heavy burden of demonstrating that Maybank had "no possibility" of establishing a claim against Walters and Mahfood in state court.   Specifically, the court found that courts in other jurisdictions have recognized a fiduciary duty owed by an investment advisor to the client.  The court also stated that it was not unreasonable to presume that South Carolina courts could extend to individual financial advisors the holding in *Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986), in which the South Carolina Supreme Court found that a financial institution owes a fiduciary duty to its customer if it goes beyond the provision of transactional services and engages in an advisory role.  The court also distinguished Defendants' case law supporting the theory that Walters and Mahfood could not be personally liable for a breach of fiduciary duty because they were agents who owed a duty solely to their employer/principle, BB&T.   Though the court found Defendants' arguments insufficient for the purposes of succeeding on their fraudulent joinder claim, the court also found that those arguments were objectively reasonable such that denial of attorney's fees was appropriate.

The court similarly found flaws in Defendants' assertions that no claim against Walters and Mahfood was possible under sections 35-1-509(b) and 509(f) of the South Carolina Securities Act, S.C. Code Ann. § 35-1-509 (Supp. 2010).  The court rejected Defendants' narrow reading of the statutes, noting that South Carolina courts had not sufficiently defined the relevant

terms upon which some of Defendants' arguments were based. The court ultimately rejected Defendants' assertion that Walters and Mahfood were exempt from liability under 509(f)'s "broker-dealer" exception[2] because it could not conclude from the record before it whether or not the exception was applicable. Therefore, the court found remand appropriate, but declined to find Defendants' arguments objectively unreasonable.

Maybank argues clear legal error in the court's determination not to award attorney's fees to him, pointing to the following passage of the court's Order: "Many of the claims made by Maybank and the arguments made by Defendants have not been addressed by South Carolina courts. Accordingly, Defendants had an objectively reasonable basis for removing the case to federal court." *Maybank*, 2012 WL 3157006, at *7. Maybank argues that "the very existence of any novel claims in the plaintiff's complaint" not only precludes a finding of fraudulent joinder, but also "precludes any objectively reasonable removal based on fraudulent joinder." Plaintiff's Reply in Support of Motion to Alter or Amend [Dkt. No. 50 at 4]. Maybank's theory is based on the Fourth Circuit's decision in *Hartley v. CSX Transp., Inc.*, in which the court held that a "truly 'novel' issue . . . cannot be the basis for finding fraudulent joinder." 187 F.3d at 425. The very fact that courts may differ in their resolutions of [an issue] shows there is a possibility of recovery." *Id.* In other words, if a plaintiff joins a defendant under a novel issue of law, a court cannot find fraudulent joinder because the matter has not been judicially determined, thus recovery is possible. "[T]here need be only a slight possibility of a right to relief" on the

---

[2] Section 509(f)(2) excludes from liability under 509(f) "a broker-dealer or its agents if the investment advice regarding securities that is provided is solely incidental to transacting business as a broker-dealer and no special consideration is received for the investment advice regarding securities." S.C. Code Ann. § 509(f)(2) (Supp. 2010). The statute defines a broker-dealer as "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account," but expressly excludes a bank or financial institution engaged in specific activities described in the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(4) and (5). *See* S.C. Code Ann. § 35-1-102(4) (Supp. 2010).

plaintiff's underlying claims for a court to remand the case. *Id*. at 426. "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id*. Maybank argues that, because his claims raise novel issues that have not been addressed by South Carolina courts, Defendants' removal was necessarily doomed to fail under *Hartley*, and therefore could not be objectively reasonable for the purposes of § 1447(c).

The court finds that Maybank interprets *Hartley* too broadly. First, *Hartley* does not address the issue of attorney's fees under § 1447(c). Moreover, this interpretation conflates the standard for deciding the validity of a fraudulent joinder claim – whether a plaintiff has any possibility of recovery – with the standard for determining the propriety of attorney's fees – whether a defendant had an objectively reasonable basis for seeking removal. The ultimate success of Defendants' fraudulent joinder claim does not dictate the court's decision to award Maybank attorney's fees; the language of § 1447(c) explicitly leaves the decision to award attorney's fees to the sound discretion of the court. *See Martin*, 546 U.S. at 136 ("The word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion.") (internal quotations omitted). Instead, the relevant inquiry is whether the arguments Defendants made in support of their removal motion were reasonable, coherent and supported by legal authority. *See New Jerusalem Rebirth & Restoration Ministries, Inc. v. Meyer*, Civil No. 1:11cv312, 2012 WL 2704251, at *5-6 (W.D.N.C. July 6, 2012) (ordering remand but declining to award attorney's fees because Defendants' fraudulent joinder arguments, which included an untested application of a state statute, were nevertheless supported by reasonable legal authority and were thus objectively reasonable); *Kerr v. Branch Banking and Trust Co.*, Civil Action No. 2:10-cv-0104-MBS

(D.S.C. August 16, 2010)[3] (ordering remand and awarding attorney's fees where the court found that Defendants' fraudulent joinder argument, which relied on a novel issue of state law, "lacked adequate support from case law and South Carolina statutes" and therefore lacked an objectively reasonable basis for seeking removal) [Dkt. No. 34-1, at 14-16].

Here, Defendants' arguments, though not ultimately persuasive on the issue of fraudulent joinder, were supported by reasonably analogous case law and a reasonable reading of the relevant statutes. While Maybank's claim raised a novel issue regarding whether an investment advisor owed a fiduciary duty to his clients, Defendants' position relied on established South Carolina legal authority. Defendants' denial of liability under the Securities Act relied on a statutory exception, which the court found may have exempted Walters and Mahfood from liability if BB&T qualified as a broker-dealer. Further, Defendants argue convincingly that to impose Maybank's interpretation of *Hartley* would require a removing party to have a factually on-point case in every instance to support its removal action. Such a requirement, Defendants assert, would chill a party's statutorily-granted right to seek relief in a federal forum.

---

[3] In his Motion for Costs and Expenses (Attorney's Fees) [Dkt. No. 34], Maybank asserted that the *Kerr* decision involved virtually identical fraudulent joinder arguments and that the court's decision in that case should have put Defendants on notice that their fraudulent joinder arguments were not objectively reasonable in this case. However, as Defendants point out, the issue in *Kerr* turned on the court's finding that a BB&T employee could be liable for negligent misrepresentation, an issue not before the court here. In deciding to award attorney's fees, the court found Defendants' argument that the BB&T employee could not be liable for negligent misrepresentation as a result of a South Carolina statute, which had no precedential decisions interpreting it, presented a novel issue of state law and thus required remand. The court further stated that it had located South Carolina precedent that could establish that the individual defendant in that case owed the plaintiff a duty of care. Ultimately, the court in *Kerr* decided to award fees on the ground that "Defendants' basis for their fraudulent joinder argument lacked adequate support from the case law and South Carolina statutes" [Dkt. No. 34-1 at 15] and not because the presence of novel issues required an award of fees. The instant case is distinguishable from *Kerr* because the court did not locate clear South Carolina precedent holding that investment advisors like Walters and Mahfood owed a fiduciary duty of care to a client.

Additionally, Defendants contend that the underlying issue of whether Walters and Mahfood owe a fiduciary duty to Maybank is not novel given their reading of established principles of agency law in South Carolina, under which an agent cannot serve two masters. Furthermore, Defendants made a reasonable argument that even if South Carolina recognized a fiduciary relationship between an investment advisor and its client, such a duty would conflict in this case given the duty Walters and Mahfood owed to BB&T as employees/agents. Though the court determined that the case law cited by Defendants was distinguishable because the cases cited examined real estate and insurance agents rather than investment advisors, the court also determined that Defendants' arguments were objectively reasonable.

Ultimately, the court applied the Supreme Court's reasoning set out in *Martin v. Franklin Capital Corp.*, which states that the objectively reasonable analysis under § 1447(c) should "recognize Congress' desire to deter removals intended to prolong litigation and impose costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." 546 U.S. at 133. The court found Defendants' arguments were objectively reasonable under that standard. For the reasons stated above, the court does not find that its decision not to award attorney's fees was based on a clear error of law.

**Manifest Injustice**

Maybank claims that the court's failure to award attorney's fees creates a manifest injustice because the litigation surrounding remand delayed the resolution of this case by more than eight months and because it has resulted in an additional $65,000.00 in attorney's fees to litigate both the remand and the attorney's fees motions. The court is not convinced, nor has Maybank provided any legal authority supporting the proposition, that a manifest injustice

necessarily results when a party expends funds to litigate an issue of removal, even if it is successful on a motion to remand. Both parties have expended funds in litigating this issue, and such costs are a natural consequence of litigation.

Maybank also contends, citing *Kerr*, that Defendants' removal in this case is part of a pattern of abusive tactics and procedural gamesmanship. The court is not convinced. First, Maybank argues that if Defendants had researched the issues in this case, they would have known that there were novel issues of law upon which it could not have reasonably believed it would succeed. As discussed above, Defendants did not view the issues as novel and this court found that Defendants' reliance on the analogous case law cited and their interpretation of the applicable statutes were objectively reasonable.

Maybank's comparison of this case to the *Kerr* case, in which BB&T unsuccessfully removed a case based on allegations of fraudulent joinder and in which the plaintiff was awarded fees, is unpersuasive because as discussed above, *supra* note 3, *Kerr* and this case are factually distinguishable. Therefore, Maybank's claim that Defendants should have known their fraudulent joinder claim would fail is not compelling. Further, the presence of one procedurally similar case does not necessarily establish a pattern of abusive behavior. For these reasons, the court does not find manifest injustice in its decision not to award attorney's fees to Maybank.

**New Evidence**

To prevail on a Rule 59(e) motion to alter or amend the judgment on the basis of newly discovered evidence, a party must demonstrate that

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

9

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). In this case, the issue is whether the new evidence demonstrates that Defendants had reason to believe that their removal of this case to this court was not legally proper such that the court should amend its original order and award attorney's fees to Maybank.

Maybank submits new evidence in the form of documents and deposition testimony. Specifically, Maybank submits a letter he received from BB&T Wealth Advisors Sales and Service Manager Ralph Borello on November 28, 2012, along with a refund check in the amount of $79,682.19 for two separate fees charged in 2006 and 2009 by a BB&T subsidiary called BB&T Asset Management, Inc. *See* Refund Letter [Dkt. No. 55-1]. Upon seeking clarification from Defendants' counsel regarding the nature of the refund, Maybank learned that the fees were "associated with the variable prepaid forward contracts" ("VPFC") that Maybank had purchased, which are some of the investment vehicles at issue in this case. *See* Emails Between Counsel [Dkt. No. 55-2]. Maybank subsequently deposed Borello to provide additional context regarding the decision to issue refunds.[4] *See* Borello Deposition [Dkt. No. 55-3]. Borello testified that BB&T was not required to make the refund but did so because it more accurately reflected the company's current billing practices. Borello's testimony also described the employee compensation scheme used in BB&T's Wealth Advisors Division as one in which customers' investments generate funds for BB&T and that such funds are placed into wealth generating accounts from which members of the Wealth Advisors Division are compensated. All of this information[5] leads Maybank to contend that Walters and Mahfood, as employees of BB&T's

---

[4] Borello was not employed by BB&T at the time of the relevant events in this case.

[5] In his Supplement, Maybank also included a letter from BB&T's general counsel responding to Maybank's request for a pre-litigation settlement conference. *See* General Counsel Letter [Dkt.

Wealth Advisors Division, received at least an indirect benefit for the investment advice Maybank received, thereby making Defendants' denial of liability under section 35-1-509(f) of the South Carolina Securities Act untenable.

> Section 35-1-509(f) provides:
>
> [a] person that receives directly or indirectly any consideration *for providing investment advice* regarding securities to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person, is liable to the other person.

S.C. Code Ann. § 35-1-509(f) (Supp. 2010) (emphasis added).

Defendants' argument supporting their fraudulent joinder claim has consistently been that Walters and Mahfood could not be liable under 509(f) because they did not personally give investment advice to Maybank and therefore were not persons who received "consideration for providing investment advice" as required by the statute. S.C. Code Ann. § 35-1-509(f) (Supp. 2010). First, Defendants note that Maybank's original complaint, filed on December 22, 2011, on which the Notice of Removal was based, failed to allege a specific violation of section 35-1-509 and failed to plead that Walters and Mahfood received consideration for investment advice given. Defendants interpreted the complaint to allege a violation of 509(f) but asserted that no

---

No. 55-4]. This letter is not newly discovered evidence as Maybank received this letter on October 25, 2010, before the court's previous order. The letter asserted that Maybank had no colorable claim against BB&T and further stated that BB&T found "no basis whatsoever for any liability to Mr. Maybank." *Id.* Maybank offers this letter as additional evidence that BB&T charged fees for investment advice related to the investment vehicles at issue in this case while Defendants pursued their removal action on the grounds that Walters and Mahfood gave no advice and received no compensation for any such advice. While the letter stands in stark contrast to the newly provided letter stating that BB&T had incorrectly charged fees, the letter does not address whether Walters and Mahfood gave advice, which is the relevant issue here.

such violation was possible under the statute since neither Walters nor Mahfood gave investment advice or received compensation for it.[6]

Defendants' position regarding Maybank's South Carolina Securities Act claim was based on the Affidavit of Ross Walters [Dkt. No. 1-1], which was attached to their Notice of Removal [Dkt. No. 1].[7]   In that affidavit, Walters denies that he or Mahfood ever gave investment advice or personally received directly or indirectly any compensation or consideration for providing any investment advice [Dkt. No. 1-1].   Walters also asserts that Mahfood, as the relationship manager, merely facilitated the introduction of Maybank to Nate Deal, an employee of BB&T Asset Management in Raleigh, North Carolina, who discussed the VPFCs with Maybank. *Id.*   In a second Affidavit of Ross Walters [Dkt. No, 38-1] attached to Defendants' Response in Opposition to Plaintiff's Motion for Attorney's Fees [Dkt. No 38], Walters further clarifies that neither he nor Mahfood served as an investment advisor or provided

---

[6]  Maybank amended his complaint on February 22, 2012, and specifically alleged that "Defendants, including Walters and Mahfood, were compensated either directly or indirectly for investment advice and services provided."  Amended Complaint [Dkt. No. 16].  Because courts generally analyze the propriety of removal based on the original complaint rather than amended complaints,  *see Pinney v. Nokia, Inc*., 402 F.3d 430, 443 (4th Cir. 2005), the court also analyzes whether Defendants' fraudulent joinder allegation was objectively reasonable based on the original complaint.

[7]  Defendants cite *Griggs v. State Farm Lloyds,* 181 F.3d 694 (5th Cir. 1999) for the proposition that the court may consider Walters' affidavits and other summary judgment-type evidence when reviewing a fraudulent joinder claim.  In analyzing a party's fraudulent joinder claim, the court is also obliged to resolve "any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [the plaintiff's] favor." *Id*. at 699.   Having resolved the fraudulent joinder issue in Maybank's favor, the court is now interested in whether Defendants had a legitimate belief that their removal action was objectively reasonable.  The deposition testimony from Walters denying that neither he nor Mahfood personally gave investment advice to Maybank supports Defendants' contention that neither man could be liable under section 509(f).  The court need not resolve the issue of whether Walters or Mahfood gave such advice, but need only consider whether such testimony supports Defendants' claim that they had a legitimate belief that their arguments in support of removal were objectively reasonable.

investment advice to Maybank at any time, but merely introduced Maybank and coordinated meetings with other professionals working in various BB&T entities. Affidavit of Ross Walters [Dkt. No. 38-1, at 1]. Walters asserts that the Policies and Procedures of the Wealth Advisor's Division of which he and Mahfood were apart prohibit wealth advisors from offering investment advice, opening brokerage accounts, reviewing or approving any client brokerage accounts, executing transactions for the purpose or sale of any security or inducing or attempting to induce the purchase or sale of any specific security. Affidavit of Ross Walters [Dkt. No. 38-1, at 2].[8]

Maybank contests this assertion via an affidavit attached to Maybank's Reply to Defendants' Response to the Motion for Attorney's Fees [Dkt. No. 40]. He asserts that Walters and Mahfood were his "fiduciaries, as they sought to perform and either actually performed or supervised the performance of wealth management planning as well as the execution of discretionary financial services on my behalf." *See* Affidavit of Francis P. Maybank [Dkt. No. 40-5].[9]

The new evidence does not, as Maybank claims, rebut the deposition testimony given by Walters denying that either he or Mahfood personally gave investment advice to Maybank. At most, it demonstrates that funds generated by Maybank's investments funded accounts from

---

[8] Walters asserts that these policies have not been materially changed with regard to these prohibitions since 2006. Borello's testimony confirms that the policy existing since October 2010 when he became employed by BB&T is that wealth advisors make no investment recommendations, are not brokers and cannot execute transactions.

[9] Maybank's attorney also asserts that he told counsel for Defendants, several days prior to the removal action being filed, that upon information and belief Walters and Mahfood were proper Defendants because Maybank believed them to be his fiduciaries who had developed and implemented the investment and wealth management strategies for Maybank's assets. *See* Willoughby Affidavit [Dkt. No. 34-2].

which BB&T Wealth Advisors were compensated.[10]  However, a person is liable under 509(f) if that person receives consideration for providing investment advice.  The new evidence does not establish that Walters and Mahfood gave investment advice.  Had Maybank's new evidence demonstrated that Walters and Mahfood in fact gave investment advice, such evidence would have shown Defendants' arguments in support of removal to be based on a falsehood, which would have necessarily rendered their fraudulent joinder argument objectively unreasonable. Because the new evidence does not establish that Walters and Mahfood gave investment advice to Maybank, the court is not required to alter its prior decision not to award attorney's fees to Maybank.

In analyzing the propriety of Defendants' fraudulent joinder claim, the court also recognized that, if Walters and Mahfood could be liable under 509(f), they might also be exempt from liability under the "broker-dealer" exception in section 509(f)(2).[11]  *See* S.C. Code Ann. § 509(f)(2) (Supp. 2010); *see also supra* note 2.  Ultimately, because the record was insufficient to demonstrate that the BB&T entity employing Walters and Mahfood was a broker-dealer as

---

[10] The notion that this method of employee compensation might constitute direct or indirect consideration for the purposes of establishing liability under 509(f) was previously before the court in Maybank's memorandum supporting his Motion for Remand [Dkt. No. 15, at 22-23].  In considering this argument and evaluating the law and the facts in the light most favorable to Maybank, the court presumed that Maybank could show that Walters and Mahfood gave investment advice and received some consideration for that advice as a result of the method of employee compensation used by BB&T's Wealth Advisors Division.  Specifically, the court found that, because direct or indirect consideration is not defined in the statute, a South Carolina state court could find that salaries and commissions paid by BB&T to Walters and Mahfood could constitute such indirect consideration for purposes of 509(f). Accordingly, if a state court could find that such compensation did give rise to liability and that Walters and Mahfood gave investment advice, this court was unable to conclude that there was no possibility of liability, and therefore found remand necessary.

[11] The court stated: "If the broker dealer exception is not applicable here, Defendants have not demonstrated that no colorable claim exists against Walters and Mahfood for violations of Section 509(f)."  *Maybank*, 2012 WL 3157006, at *6.

defined by the statute, *see supra* note 2, the court could not definitively rule that the exception would apply such that Maybank would have no possibility of recovery under the statute. This finding necessitated remand. Nevertheless, Defendants' argument that Walters and Mahfood were exempt from liability under 509(f)(2) was a legitimate argument and one the court found to be objectively reasonable in support of Defendants' removal action.

Finally, Maybank also believes that the refund BB&T issued to customers of its Wealth Advisors Division constitutes further evidence of what he alleges to be Defendants' procedural gamesmanship and demonstrates that Defendants continued to pursue their removal action despite having knowledge that inappropriate fees were charged for services related to Maybank's purchase of VPFCs. Maybank asserts this is additional evidence that Defendants' removal action was intended solely to prolong the litigation and impose additional costs on Maybank.

Maybank assumes that BB&T's investigation, through which the improper fees were discovered, and the decision to issue the refunds was prompted by his lawsuit. However, the evidence included in Maybank's supplement regarding the decision to issue the refunds comes from Borello's testimony and the letter accompanying the refund check, both of which state that the decision to refund the fees was based on BB&T's current billing practices and that the refund was entirely voluntary, i.e. not something for which BB&T was legally liable. Therefore, the new evidence does not conclusively establish a connection between the refunds and Maybank's lawsuit. Even if it did, such a connection does not undermine Defendants' fraudulent joinder arguments since the relevant issue for removal with regard to liability under 509(f) is whether claims could be made specifically against Walters and Mahfood for giving investment advice, not whether fees were charged for advice given by other BB&T employees.

Thus, the court finds that Maybank's pleadings and his purported new evidence are insufficient to establish that Defendants lacked an objectively reasonable basis for seeking removal.  Further, the new evidence does not establish that Defendants engaged in abusive tactics designed to prolong litigation that could warrant an award of attorney's fees to Maybank. Therefore, the new evidence does not require the court to amend its prior judgment denying attorney's fees to Maybank.

## CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff Francis P. Maybank's Motion to Alter or Amend Order Denying Motion for Costs and Expenses (Attorney's Fees) [Dkt. No. 48].

**IT IS SO ORDERED**.


United States District Judge

August 20, 2013
Greenville, South Carolina